612 and 4312 of my law, this is the American Red Cross at all. This is the American Red Cross at all. All right, are we ready to proceed? Mr. Wilkinson, do you need to remain seated or are you? No, I'm fine. You're okay? All right. Do you need to use the podium for support? I asked because you came up outside with a walker. Yes. Then I'm going to tell you a warning. Don't hold on to it so tightly. I promise not to cause any damage. Oh, no, no. I think this lawyer was fainting, but we once had somebody go over backwards with the podium on top of him. I just want to make sure that doesn't happen today. I'm not worried about the podium. I'm worried about you. Okay, we can proceed. May it please the Court, I'm Bill Wilkinson on behalf of the appellant in this case against the American Red Cross. The good works of the American Red Cross are very well known. What's not well known is that the American Red Cross is the dominant player in a vibrant economic market in the sale of human blood products, in which market it earns billions of dollars of profits per year, a unique business in that its raw material for the human blood products that it sells is donated by people like us in the courtroom and people like the appellant in this case. And in the process of conducting this gargantuan business, sometimes people get hurt. The appellant back in 2008 went in to give blood, as she had many times in the past. A few minutes later, she was crippled for life, permanently disabled by a mistake made by the phlebotomist at the donation center that she attended up in Columbus that day. For her injuries, she doesn't yet have a remedy because she only got part of the trial she was entitled to. This appeal is about the part of the trial that she was denied. I think the best example, although perhaps not the most important issue, of the parts of the trial that she was denied is the fact that the trial court issued an order in limine, which prevented the appellant from presenting evidence of FDA consent decrees and violation letters by the FDA that had been issued against the American Red Cross, specifically on the issues of blood donor safety and health. How would any of those documents have made it more or less likely that negligence occurred in Ms. Ross' particular case? The deprivation of the right to submit that evidence did not affect the question whether and how the phlebotomist was negligent that afternoon in 2008. What would it have related to? Pervasive throughout the trial, from the opening statement, through the witness testimony, through the closing argument, was the argument and testimony presented by the Red Cross about FDA regulation. Don't worry about our practices. Don't worry about donor safety and health. We're regulated by the FDA. The FDA takes care of this. You don't need to take care of this. Donor safety and health is first and foremost in our priorities. If that was a part of the Red Cross' argument, it would seem that that would be remedied by the same kind of objection against that argument that the Red Cross made against your presentation of all the consent decrees, i.e., the general topic of regulation by the FDA is not really germane to what happened to Ms. Ross. But it was allowed. I mean, pervasively throughout the trial. Would you object to that? I do not recall as I stand here, but I'm not certain I can either. Was there evidence that they complied with the FDA standard? No. In conclusory fashion only, the medical director from the Red Cross testified about, generally speaking, the fact that they're required to comply with FDA standards. In this case, the reason it was part of a trial for the appellant is because her counsel did not get to impeach the witnesses who talked about this. I expect as, when I cross-examine a witness, and to show that they're not telling the truth. In this case, the Red Cross witnesses weren't telling the truth about donor safety and health. They just weren't. In what way? They said that it's first and foremost, that it's their utmost concern, and that the jury need not worry about their practices in this regard because they are regulated by the FDA. That sort of seems beside the point to me. I mean, it seems like, but you can't expect the district court to curtail that sort of thing if it's not asked to. We did not expect the district court to curtail it. I think it was permissible testimony for the Red Cross to develop. Why? It's just a fact of life, the fact that I'm regulated by the Supreme Court of Ohio. I mean, it doesn't prove or disprove anything. Well, you know, I mean, I was Judge Greer's trial judge. I was a trial judge for a long time, and you sort of want to have trials. Judge, for that matter, Judge White was a trial judge. So you sort of want to have trials be about what the trial is about. And the issue of general regulation and general safety and what happened yesterday with consent decrees doesn't seem to me to have much to do with what happened in this particular case. Well, as I said, I don't know that this is the most, the gravest issue in this case, but I think it is exemplary of the fact that there's a certain fundamental right to impeach a witness to show that they're not telling the truth, and the plaintiff was denied that right. What was the consent decree about? About failure to maintain records, failure to conduct medical director reviews of actions taken by subordinates, loss of records, medical records, all concerning donor safety and health. Same kind of records that were lost in this case. I think to move on to the topics which I think are the most serious in this case, on the res ipsa loquitur requested instruction, which was repeatedly denied by the district court. It appears that the Akron General Medical Center case is the leading Ohio case on the topic, and both sides have cited it in their briefs. But I think to get to the essence of the res ipsa argument, res ipsa does not apply, cannot be applied, if the defendant presents evidence of a non-negligent possible cause for the defendant's injury, that is equally probable to negligence. In this case, the plaintiffs claim negligence, say we'll never know exactly what the phlebotomist did wrong, so we want a res ipsa instruction. The defendants try to avoid res ipsa by saying, no, this could have been caused by non-negligent conduct. This kind of thing happens even in the absence of negligence. The problem with that is that's not evidence. The Red Cross has only restated the law. If something else could have caused the plaintiff's injuries, and if that something is equally probable to negligence or more probable than negligence, the plaintiff doesn't get a res ipsa instruction. But you can't just sit on the defense side of the room and say this could happen without negligence. That's not enough. You've got to say what? The Akron general medical case is the perfect example because the plaintiff wanted a res ipsa instruction. The defendant said no and brought in an expert who said the plaintiff's medical condition could have been caused by negligence, but it also could have been caused by this series of medical events and conditions that may very well, equally well have occurred in this case. Did any of the experts say that this was the type of injury that would only have occurred if the phlebotomist had been negligent? The nursing expert presented by the appellant said that, however, the CRPS, the disease expert tendered by the plaintiff, said that this could be caused by a needle stick in the absence of negligence. In other words, I can plunge a needle. I understand there was proof in the case that this type of injury can occur in the absence of negligence. It certainly can. What I'm asking is if there was contrary evidence that this sort of injury occurs only in the presence of negligence. Yet the plaintiff's nursing expert, Woodruff, said that in the context of blood drawing, phlebotomy, this injury, that is to strike a trunk nerve deep in the arm with a needle and miss the vein entirely, only occurs in the case of negligence. On the other hand, a needle stick can cause CRPS without negligence. I can take a needle today and plunge it into my arm or my leg and contract CRPS because of nerve damage without any negligence at all. So for there to be any arguable applicability of race ipsa, the jury would have had to believe that one expert who testified, as you have suggested? No. With a race ipsa? The classic race ipsa is, you know, the sponge left in while surgery is being done or something like that. Sure. And so everybody knows that you're not supposed to leave the sponge when you close the surgical incision. And so there's typically no factual dispute about whether the sponge getting there was caused by anything but negligence. Here there was a bona fide dispute, and I'm just trying to figure out if there was some evidence that could have supported race ipsa as a theory. What supports race ipsa as a theory is the fact that the procedure is being conducted under the exclusive control of the Red Cross, and ordinarily people don't walk in to donate blood and walk out crippled for life. That's all that's required. One second. I mean, that is all that's required when you've got somebody dropping something from a window. I think when you're dealing with things that require specialized knowledge, the law doesn't let you say ordinarily people walk in and they don't get that injury, because the question is whether maybe it could be the fact that ordinarily it doesn't happen, but if the reality is in the medical field that of 1,000 people whose blood is drawn, with or without negligence, 15 of them may end up with a problem. That's not proper a situation for applying race ipsa. So it's not the type of case that's within the ordinary experience of people. Now, if you have, I agree with you, that if you have an expert who says that this does not happen in the absence of negligence, then it becomes a question. But... Well, I'm afraid that the state of the law in Ohio is inconsistent with what you just articulated. Akron General Medical Center says two requirements, under the exclusive control of the defendant, and doesn't usually happen in the absence of negligence, period. Doesn't ordinarily happen in the absence of negligence. No expert testimony is required. But that's a different type of case. It was a medical case. It's ordinarily happen. I mean, I guess it's a definition of ordinarily. I mean, my only other response to your question, Judge, is that if race ipsa loquitur isn't applicable here because it happens frequently enough that it's recognized as something that can happen, then the part of the trial the plaintiff didn't get, in this case, the appellant didn't get, was the failure to warn strict liability claimant. I'll reserve my remaining minute, if I may. You agree with Judge White that expert testimony is required on this point, don't you? On which point? The point of whether or not this occurs in the absence of negligence, this nerve damage. I think I do. But the deficiency in simply saying this can happen in the absence of negligence is that that's simply a statement of what the law is. Race ipsa doesn't apply if it's equally or greater probability that this could happen without negligence. But you've got to say how. Okay, so the experts, that's a different argument. I think you started going there. You're saying that none of the experts described how this might happen in the absence of negligence. Precisely. Okay. And then also, you had a failure to warn claim that was? No. I'm the third lawyer on this case. The first lawyer did not include that claim in his complaint. The second lawyer took over, moved to amend. It was denied. A pleading deadline had expired before he took on the case. And then I took over the case November 2011 and two months later moved. You tried the case. I tried the case, yeah. I took it over and moved to amend to include the failure to warn claim. Also, motion denied. And then post-trial made the Rule 15b motion concerning the failure to warn Kainal. And then one other question. In response to, in the dialogue regarding the race IPSA instruction, did you make the point that no expert described how this could happen in the absence of negligence? Yes. The Akron General Medical Center case was striking to me from my first reading of it during my representation of the appellate in this case because it sets out the old two requirements that we all learned in law school from the Barrel Falls on Head case. But it was also a medical case in which the defendant said, look, this can also happen without negligence. This, this, this, and this could have happened, which would have resulted in the same damage, injury, or symptoms. And that's so, it struck me from the very first time I read the case. Thank you. Okay. We'll hear from Ms. Adelman. Good morning. May it please the Court. This is a simple negligence case arising from a routine blood donation and nothing more. At trial, the Red Cross defended appellant's negligence claim and only that claim. The Red Cross presented evidence and argument that it met the standard of care and was not negligent. It also presented evidence and argument that appellant did not have CRPS and was not injured. Appellant received a fair nine-day jury trial on her negligence claim. She presented a liability expert and a damages expert, and the jury heard from 18 witnesses. Appellant did not object to the district court's jury instructions except for the res ipsa loquitur instruction. She did not object to any of the district court's interrogatories. The jury's verdict and the district court's judgment is supported by competent, credible evidence going to all the essential elements of appellant's negligence claim. And the question that the jury answered was? The question that the jury answered was a combination of liability and causation. Did the plaintiff prove by a preponderance? Causation is a part of liability. You can't be liable without causation. So it's a liability instruction. Standard of care, a combination of standard of care. It was standard of care as well as, and did the negligence of the Red Cross cause appellant to have an injury? Okay, so we don't know whether the jury found no negligence or no injury. The jury determined in answering the interrogatory that appellant had not proved her negligence claim by a preponderance of the evidence. So there was no specific finding, if I understand your question, Judge White, as to whether or not appellant has CRPS. Right. The district court did not abuse its broad discretion or err as a matter of law with respect to any of appellant's assignments of error here. I'm going to address the argument raised by appellant. And first, I'm going to address the issue of res ipsa loquitur. The district court did not abuse its discretion in refusing to give a res ipsa loquitur instruction here. Under Ohio law, the doctrine of res ipsa loquitur allows a jury to infer negligence under very limited circumstances and where two requirements are met. One, the instrument of the injury was under the exclusive management and control of the defendant. And two, the injury would not have happened but for negligence. Here, there's no dispute that the second requirement was not satisfied. Okay. You say there's no dispute. There was an expert who testified that this does not happen in the absence of negligence, right? The appellant's causation expert, Dr. Nobler, testified in his report at page ID number 7265 that CRPS can occur in a properly performed needle step. I'm not asking about that. Woodruff. Woodruff is who Mr. Wilkinson referred to. Was that testimony as he represented? Woodruff testified that a nerve should not have been struck during a phlebotomy. We disputed, and there was evidence in the record, that there was no nerve injury. Appellant is claiming... That's kind of, though, what I asked Mr. Wilkinson. I mean, the only arguable basis on which race ipsa could have been given was based on that testimony. Exactly. But the district court judge reviewed all of the testimony in the record. Well, I understand that, and I'm not making any observation about whether he was correct or incorrect. I'm just saying, was the race ipsa instruction that was requested general, or was it specific as to the Woodruff testimony? I.e., if the jury believed that testimony... It was a general instruction. ...and believed that a nerve had been struck, then it could apply this instruction? It was the requested instruction that was rejected by the district court was a general race ipsa loquitur instruction. The district court based his decision that the race ipsa loquitur rule does not apply, primarily based upon Dr. Nobler's testimony that CRPS can occur in the absence of negligence and testified that something as simple as bumping a table could cause CRPS. As well, the Red Cross's expert testified that in a perfectly performed phlebotomy... It doesn't matter. Why does it... Are you saying that there has to be agreement of the parties that it doesn't happen in the absence of negligence to get the instruction? I'm saying that an inference of negligence does not apply if experts on both sides claimed that this is a condition that definitely can occur without negligence. Okay. There's a difference between saying, look, people can break an arm without negligence, right? Correct. On the other hand, if you break your arm in a specific context, you may be able to say it doesn't... If your arm is broken on the operating table, then people might be able to say that doesn't happen in the absence of negligence. So it's the same thing. Maybe you can get this condition in the absence of negligence. But someone might also say that you don't get this condition from a blood draw unless there's negligence. And so what I'm saying to you, you seem to be saying that in order to get this type of instruction, the experts have to agree. But that will never happen. You're going to have a plaintiff's expert who says this doesn't happen in the absence of negligence and a defense expert that disagrees. And the instruction to the jury would be that if you find that this does not happen in the absence of negligence, blah, blah, blah, blah, blah. So I'm sort of losing you because I don't hear the response to the fact that Woodruff said you don't get this injury from blood draw unless the phlebotomist was negligent. Mr. Woodruff had no experience in blood banking. There was testimony from the Red Cross phlebotomist and the medical director of the Red Cross that says that a nerve strike is a known complication of a perfectly performed phlebotomy. I think maybe the point here would be not that the district court could not theoretically have given an instruction limited to the testimony of Mr. Woodruff and limited to the jury's making findings based on that. However, one, that's not the testimony that was—that's not the instruction that was requested. And clearly, there was a big dispute about whether res ipsa was applicable here. And second, it might be that there'd be an argument that the quality of the evidence that was relied upon to support res ipsa was not such that it supported the requested instruction. But, I mean, that's not where y'all were in this trial. Correct, Judge Gibbons. I appreciate that insight. I mean, clearly, the court felt that on balance with all of the evidence, that appellant had not satisfied the second requirement under Ohio law to get a res ipsa instruction. And that was what the court found repeatedly. And that is why—and the record supports that—why the instruction wasn't given here. There was also—a res ipsa instruction was also not given because the district court judge determined that in this case, there was a dispute as to whether or not there was even an injury. And he believed that that was a really important factor here. The defense experts disputed the fact—appellant's argument—that there was even a nerve strike or that appellant had CRPS. So, based on those two issues—the fact that there was a dispute as to whether or not there was an injury and the second element of the doctrine was not satisfied— the court determined that the res ipsa loquitur instruction was not applicable because the doctrine did not apply. I'd like to move on with my remaining time to address the issue of the consent decree and the ADLs. The district court did not abuse its discretion in granting the Red Cross's motion in limine to exclude the consent decree and the ADLs. Two things are important to remember with regard to this assignment of error. First, the court modified its initial motion in limine ruling and specifically permitted testimony regarding the consent decree, the ADLs, and the Red Cross's commitment to donor safety. Appellant was permitted and did extensively question the Red Cross's medical director about the consent decree, the ADLs, the Red Cross's alleged record-keeping problems, and its commitment to donor safety. Second, it's important to remember here that appellant never sought to introduce the actual consent decree or the ADLs at trial. She never proffered these, so the court did not exclude them, and she has waived any right to appeal their exclusion under Federal Rule of Evidence 103. The motion in limine didn't cover this? The motion in limine covered the exclusion of the consent decree and the ADLs, and the court granted that motion in limine based on Rule 402 and Rule 403. During trial, the court reversed itself upon appellant's oral motion during trial and said that he would permit testimony on that issue. He believed that I opened the door on the FDA issues and permitted appellant to question the medical director about that specific issue that was covered in the motion in limine. So if the district court's original ruling on the motion in limine was an error, it was a harmless error because all of the testimony came in anyway, and I can direct the court to the transcript at pages 8044 to 8051. We believe that the district court's motion in limine ruling was correct. However, all of the evidence that appellant's counsel wanted in came in anyway. The jury heard a lot about the consent decree, heard a lot about the adverse determination rulings, heard a lot about spoliation as well of Red Cross documents. So both of those issues would be, at best, harmless error. Mr. Wilkinson started at the very end to talk about this whole issue of strict liability and failure to warn, and I want to make sure that the panel understands what exactly happened here. Appellant filed a pre-trial motion to amend the complaint that was untimely, and the court said that pursuant to Rule 16b-4, it was untimely, and the motion could not be amended. And one of those claims was on a strict liability for an inherently dangerous activity. Appellant never moved beyond that until after trial for a motion on a strict liability failure to warn claim. Appellant claimed that this was, quote, one of the tried but unadjudicated claims, and the district court said there was absolutely no evidence at trial that a strict liability claim had been litigated. And beyond that, appellant submitted a jury interrogatory or a jury instruction on strict liability under both theories. However, appellant never objected to the court's omission of those interrogatories. I think your time is up. My time is up. Thank you. All right. Mr. Wilkinson, I didn't write down your reservation time. Did you reserve some rebuttal time? I think at 56 seconds, yeah, he had one. Okay. You did. You may have told me. I just didn't write it down. I did not. I was taken aback by the lectern warning. I didn't mean to throw you off. In my remaining minute, just a couple of things with respect to this strict liability claim being tried by the consent of the parties. In the opening statement, the judge announced to the Red Cross that in this negligence case, we are not going to be presenting to the jury the question of assumption of risk. Throughout the trial, both the appellant and the appellee presented witness after witness after witness to talk about what became an infamous exhibit at the trial, the what you should know about giving blood brochure, which is the warning, which talks about maybe a headache or maybe lightheadedness, but it doesn't say anything about walking out the door with permanent disability. And the only claim that could have been relevant to was a failure to warn claim. On res ipsa, Woodruff did, in fact, say this doesn't happen without negligence. Nobler, of course, said, and Judge White, you stole my thunder with your broken arm analogy. But sure, CRPS can be caused by any physical trauma. It doesn't have to be negligence. Thank you. Okay, I've got one last question. Given the nature of the decisions that the jury would have to, the sort of threshold decisions that the jury would have to have made to even apply res ipsa, in other words, to apply res ipsa, a proper instruction would have told the jury that to apply res ipsa, they would have had to have accepted Woodruff's testimony that this doesn't happen in the absence of negligence. So given that, what difference did it make? Because the jury was able to decide the negligence question. I don't know if I'm making myself clear. It got past me. I'm sorry. What was the practical effect of not getting a res ipsa instruction, given that the question of negligence went to the jury? That the appellant was placed in the impossible position that res ipsa was invented to avoid, and that is an injury is inflicted upon her. In this case, it's a minute subcutaneous operation of some kind, and she can never and will never know what the defendant did to cause that problem. That's even harder or more impossible to learn than why the barrel fell out of the upstairs window. That's probably ascertainable. But she's put in the impossible position of never being able to prove exactly what did the phlebotomist do wrong that caused her to hit a trunk nerve rather than a blood vein. Okay. We appreciate the argument both of you have given, and we'll consider the case carefully. Thank you.